UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

NO.: 2:23-CR-11-FL

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) **CRIMINAL INFORMATION** |
| | ) |
| SEAN TRACY DILLARD | ) |

The United States Attorney charges at all relevant times:

## INTRODUCTION

1. Between August, 2021 to December 29, 2021, Defendant SEAN TRACY DILLARD carried out a housing fraud scheme to obtain emergency rental assistance designated for households impacted by the coronavirus pandemic. The scheme included fraudulent applications submitted to the North Carolina agency tasked with administering federal Covid-19 relief funds to provide financial assistance to North Carolina residents whose housing was impacted by the Covid-19 pandemic. In total, DILLARD obtained/sought $64,860 in fraudulent proceeds in connection with this scheme.

2. On March 13, 2020, President Donald J. Trump declared the existence of a national emergency in response to the Covid-19 pandemic. On March 27, 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security (CARES) Act, which was designed to provide emergency financial assistance to millions of Americans who were suffering the economic effects caused by the Covid-19 pandemic.

3. One source of relief provided by the CARES Act was the authorization of $5 billion in Community Development Block Grant ("CDBG") programs as flexible federal funding to states and localities earmarked to prevent, prepare for, and respond to the coronavirus pandemic. The United States Department of Housing and Urban Development ("HUD") administers the Community Development Block Grant ("CDBG") program as a source of flexible federal funding for economic and community development, as well as to direct long-term recovery funding to states and localities in response to disasters and emergencies.

4. Another source of relief allocated in the CARES Act was the establishment of a $150 billion Coronavirus Relief Fund ("CRF"), funded by the United States Department of Treasury ("US Treasury"), to assist states and localities cover expenses incurred due to the Covid-19 public health emergency.

5. The State of North Carolina's Office of Recovery and Resiliency ("NCORR"), a division of the North Carolina Department of Public Safety, utilized federal funds made available in the CARES Act to assist North Carolina renters stay in their homes during Covid-19 by preventing evictions and the loss of utility services. The North Carolina Housing Opportunities for the Prevention of Evictions program, known as the NC HOPE program, utilized an initial $51.5 million allocation of CDBG funds from the CARES Act to provide housing and utility assistance. The State of North Carolina also received CRF funds from the CARES Act, of which $66 million was allocated to pay administrative costs associated with the NC HOPE program.

This first wave of rental assistance provided to North Carolina renters by the NC HOPE program, using CDBG and CRF funds, became known as "HOPE 1.0."

6. On December 27, 2020, the Consolidated Appropriations Act of 2021 ("CAA") became law, which included $900 billion in federal support for additional economic assistance and stimulus relief to address the ongoing Covid-19 pandemic. The CAA continued many of the programs authorized under the CARES Act, as well as added new allocations and new guidance to address the continued impact on American lives caused by the pandemic. Among other things, the CAA established the Emergency Rental Assistance ("ERA-1") program. Funded through the US Treasury, ERA-1 provided $25 billion for states to administer to households that were impacted by Covid-19 and unable to pay rent or utilities. A second Emergency Rental Assistance program ("ERA-2") was established through the American Rescue Plan Act of 2021 ("ARP"). Also funded through the US Treasury, an additional $21.55 billion was made available for states and localities to provide rental and utility assistance to eligible households during the pandemic.

7. The State of North Carolina received a total of $1.261 billion from ERA-1 and ERA-2. From this funding, 12 counties and six cities received $493 million directly from the US Treasury. The remaining $761.5 million was disbursed to fund the NC HOPE program. This second wave of funding to the NC HOPE program, through the US Treasury ERA programs, became known as "HOPE 2.0."

8. In total, the NC HOPE program received $879 million from the federal government to assist North Carolina renters who faced housing insecurity due to the Covid-19 pandemic.

9. The HOPE 2.0 program paid for up to 15 months of assistance, including 12 months of arrears. In exchange for the NC HOPE program funds, landlords were required to agree not to evict the tenant for a certain amount of time. The NC HOPE program closed to applicants on December 17, 2021.

10. To be eligible for assistance through the NC HOPE program, a tenant must have faced possible eviction or missed rent or utility payments anytime since April 1, 2020, and had lost income, employment, or faced financial hardship due to the Covid-19 pandemic. The tenant applicant must have occupied the rental property as their primary residence and be a named party to the lease or rental agreement. Additionally, the tenant applicant must earn an income less than or equal to eighty percent (80%) of the median income of the county of residence.

11. To obtain assistance, a tenant submitted an electronic application, stating his name, rental address, contact information, household members, household income, and contact information for the landlord or utility provider. The online application also required the tenant to confirm that (s)he lived at the address, was behind on rent or unable to pay rent or utilities due to the Covid-19 pandemic, and the amount owed to the landlord and the utility provider. The NC HOPE program requested, but did not require, the tenant to submit a form of identification. It also

4

requested a copy of the tenant's lease, or written statement from the landlord identifying the amount of rent owed. The tenant was required to certify the accuracy and truthfulness of the application.

12. If eligible to receive rental assistance, the NC HOPE program sent a Landlord Tenant Agreement ("LTA") to the email addresses provided for both the landlord and tenant. In signing the LTA, both parties were required to attest that the statements to the NC HOPE program were true and correct to the best of their knowledge.

13. Once both parties signed the LTA, the NC HOPE program required the landlord to submit an Internal Revenue Service Form W-9, with their name, address, filing status, and taxpayer identification number. By signing the W-9, the landlord certified under penalties of perjury the accuracy of the information provided to the NC HOPE program on the Form W-9.

14. Upon approval, a check issued by the North Carolina Department of Public Safety was mailed directly to the landlord or utility company to pay the tenant applicant's rent or utility bills. The address listed on the Form W-9 is where the NC HOPE program sent the rental assistance funds for landlords.

## THE SCHEME

15. At all relevant times, the defendant, SEAN TRACY DILLARD, resided in Chowan County within the Eastern District of North Carolina.

5

16. From in or about August, 2021, to December 29, 2021, in the Eastern District of North Carolina and elsewhere, defendant DILLARD devised a scheme and artifice to defraud the NC HOPE program.

17. Defendant DILLARD signed approximately ten fraudulent applications for rental assistance to the NC HOPE program, seeking a total approximate of $64,860.

18. Defendant DILLARD falsely represented he was the landlord.

19. Defendant DILLARD fabricated names of individuals to list as tenants on HOPE applications.

20. Defendant DILLARD submitted and caused to be submitted fraudulent lease agreements, wherein Defendant DILLARD was listed as the landlord.

21. Defendant DILLARD provided rental property address on the applications to obtain the NC HOPE rental assistance checks. The rental property addresses provided were determined to be uninhabitable at the time.

22. Defendant DILLARD negotiated six NC HOPE program rental assistance checks at banks and check cashing facilities.

## THE CHARGE

23. Paragraphs one through 22 of this Criminal Information are hereby realleged and incorporated by reference herein.

24. On or about August, 2021 and December 29, 2021, in the Eastern District of North Carolina and elsewhere, defendant DILLARD, knowingly and

6

willfully embezzled, stole, purloined, and converted to his own use, federal funds of the United States, that is, NC HOPE program funds of the United States Department of Treasury and United States Department of Housing and Urban Development, with an aggregate value of more than $1,000, all in violation of Title 18, United States Code, Section 641.

## FORFEITURE NOTICE

Defendant SEAN TRACY DILLARD is hereby given notice that all of the defendant's interest in all property specified herein is subject to forfeiture.

Upon conviction of the offense set forth in this Criminal Information, defendant DILLARD shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), as made applicable by Title 28, United States Code, section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to said offense.

The forfeitable property includes, but is not limited to, the following:

Forfeiture Money Judgment:

(a) A sum of money representing the gross proceeds traceable to the commission of the offense personally obtained by the defendant in the amount of at least $64,860.00.

If any of the property described above, as a result of any act or omission of the defendant:

(1) cannot be located upon the exercise of due diligence;

7

(2) has been transferred or sold to, or deposited with, a third party;

(3) has been placed beyond the jurisdiction of the court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

                                            MICHAEL F. EASLEY, JR
                                            United States Attorney

BY: _____
                                            ETHAN A. ONTJES
                                            Assistant United States Attorney